IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LAMONT RUFFIN, | ) | 4:12CV3058 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| NEBRASKA DEPT. OF | ) | |
| CORRECTIONS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff filed his Complaint in this matter on March 29, 2012. (Filing No. 1.) Plaintiff is a prisoner who has been granted leave to proceed in forma pauperis. (Filing No. 6.) On May 3, 2012, Plaintiff paid the initial partial filing fee. (*See* Docket Sheet.) The court now conducts an initial review of Plaintiff's claims to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A.

I.   **SUMMARY OF COMPLAINT**

Plaintiff filed his complaint on March 29, 2012, against Defendants Nebraska Department of Corrections, Director Robert P. Houston, Warden Diane Sabatka-Rine, psychologist Dr. S. Bruhn, Paul Rodriguez, Dr. Kari Perez, and three psychologists from the Lincoln Correctional Center. (Filing No. 1 at CM/ECF pp. 1-2.) All Defendants are sued in both their individual and official capacities. (*Id.*)

Condensed and summarized, Plaintiff's Complaint relates entirely to his desire to gain access to mental health programming prior to his parole eligibility date. More specifically, Plaintiff alleges Defendants violated his constitutional rights by refusing to provide him with mental health programming in accordance with his "personalized plan." (*Id.* at CM/ECF pp. 6-7.) This failure to provide Plaintiff with mental health programming prior to his parole eligibility date has deprived him of a liberty interest

in violation of the Fourteenth Amendment. (*Id.* at CM/ECF pp. 7-9.) Plaintiff also alleges Defendants have acted with deliberate indifference to his unspecified, serious medical needs in violation of the Eighth Amendment by denying him mental health programming. (*Id.* at CM/ECF p. 8.) Plaintiff requests relief in the form of a declaratory judgment, an injunction requiring Defendants to provide him with mental health programming, and compensatory and punitive damages, including pay he would receive if paroled and costs to receive treatment upon parole. (*Id.* at CM/ECF p. 9.)

## II.    APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A.

Therefore, where a pro se plaintiff does not set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed" for failing to state a claim upon which relief can be granted. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 569-70 (2007) (overruling *Conley v. Gibson,* 355 U.S. 41 (1967), and setting new standard for failure to state a claim upon which relief may be granted). Regardless of whether a plaintiff is represented or is appearing pro se, the plaintiff's complaint must allege specific facts sufficient to state a claim. *See Martin v. Sargent,* 780 F.2d 1334, 1337 (8th Cir. 1985). However, a pro se plaintiff's allegations must be construed liberally. *Burke v. North Dakota Dep't of Corr. & Rehab.*, 294 F.3d 1043, 1043-44 (8th Cir. 2002) (citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

## III. DISCUSSION OF CLAIMS

### A. *Sovereign Immunity*

The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities and an employee of a state sued in the employee's official capacity. *See, e.g., Egerdahl v. Hibbing Cmty. Coll.,* 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g., Dover Elevator Co.*, 64 F.3d at 444; *Nevels v. Hanlon*, 656 F.2d 372, 377-78 (8th Cir. 1981). Sovereign immunity does not bar damages claims against state officials acting in their individual capacities, nor does it bar claims brought pursuant to 42 U.S.C. §1983 which seek equitable relief from state employee defendants acting in their official capacity.

Here, Plaintiff seeks monetary relief against state employees in their official and individual capacities. (Filing No. 1 at CM/ECF pp. 1-2, 9.) As set forth above, Plaintiff may not sue a state employee in his or her official capacity for monetary relief absent a waiver of immunity by the state or an override of immunity by Congress. The record before the court does not show that Nebraska waived, or Congress overrode, sovereign immunity in this matter. Accordingly, Plaintiff's

claims for monetary relief against Defendants in their official capacities must be dismissed.

### B.     *Fourteenth Amendment Due Process Claims*

Liberally construed, Plaintiff alleges Defendants have denied him due process of law in violation of the Fourteenth Amendment. "[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Thus, Plaintiff must demonstrate that he has been deprived of a liberty interest in order to successfully claim that his Fourteenth Amendment right to due process has been violated. *Persechini v. Callaway*, 651 F.3d 802, 806 (8th Cir. 2011) (citing *Sandin v. Conner*, 515 U.S. 472 (1995)). A liberty interest can arise out of the Due Process Clause itself or be state-created. *Id.* (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)) (quotations omitted).

A liberty interest arises under the Due Process Clause when the consequences of the state's actions are "stigmatizing" and "qualitatively different from the punishment characteristically suffered by a person convicted of crime." *Sandin v. Conner*, 515 U.S. 472, 479 n.4 (1995) (citing *Vitek v. Jones*, 445 U.S. 480, 493-94 (1980)); *see also Harper v. Washington*, 494 U.S. 210, 221-22 (1980). However, an inmate does not have a constitutionally-protected liberty interest in parole. *Adams v. Agniel*, 405 F.3d 643, 645 (8th Cir. 2005) (citing *Greenholtz v. Inmates of Neb. Penal & Corr.*, 442 U.S. 1, 7 (1979)). Further, an inmate has no liberty interest in the *possibility* of parole if the action was within the original sentence imposed. As set forth in *Persechini*:

> Without question, treatment for inmates who suffer from drug addictions may provide significant benefits. But denying or terminating drug abuse treatment, ***like denial or termination of other discretionary prison***

4

> *programs*, does not result in either an atypical or a significant hardship in relation to the remainder of the prison population. Thus, there is no protected liberty interest, for example, in the sentence reduction that may be granted upon completing a Bureau of Prisons drug treatment program, *Giannini v. Fed. Bureau of Prisons*, 405 Fed. Appx. 96, 97 (8th Cir. 2010) (unpublished); or in halfway-house placement after completing a drug-treatment program, *Staszak v. Romine*, 2000 WL 862836, at *1 (8th Cir. June 29, 2000) (unpublished); or in remaining in a work release program, *Callender v. Sioux City Residential Treatment Facility*, 88 F.3d 666, 668 (8th Cir. 1996); or in participating in a drug treatment program to qualify for early release, *Koch v. Moore*, 1995 WL 141733, at *1 (8th Cir. April 4, 1995) (unpublished); or in remaining in a discretionary "shock incarceration program," *Klos v. Haskell*, 48 F.3d 81, 88 (2d Cir. 1995); or in participating in Missouri's sex offender treatment program, *Jones v. Moore*, 996 F.2d 943, 945 (8th Cir. 1993).

*Persechini*, 651 F.3d at 807 (emphasis added). Put simply, "[t]he general rule" is that "the Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed." *Id.* at 808 (finding that termination from a drug treatment program that was mandatory for parole, but discretionary with prison officials, was not outside of the punishment originally imposed).

Moreover, a state-created liberty interest arises when a statue or regulation imposes an "atypical or significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483-84; *see also Wilkinson*, 545 U.S. at 223; *Wolff v. McDonnell*, 418 U.S. 539 (1974); *Morrissey v. Brewer*, 408 U.S. 471 (1972). A state-created liberty interest also arises when a state's actions will inevitably affect the duration of the sentence. *Sandin*, 515 U.S. at 487. In Nebraska, taking advantage of self-improvement opportunities, such as completion of mental health treatment, is only one among a multitude of factors that the Nebraska Board of Parole considers in determining if a prisoner should be paroled. Neb. Rev. Stat. § 83-1,114(2). Failure to complete a personalized program plan, which may include

5

sex offender treatment as a requirement, may be considered by the Nebraska Board of Parole as a factor in their decision, but denial of parole on those grounds is not mandatory. Neb. Rev. Stat. § 83-1,107(1)(b).

Here, Plaintiff asserts that his chance at parole will be affected if he does not receive treatment according to his "personalized plan" before his parole eligibility date. (Filing No. 1 at CM/ECF p. 7.) However, as set forth above, there is no liberty interest in parole, or even the *possibility* of parole, arising from the Due Process Clause itself. Defendants have placed Plaintiff on a waiting list for treatment and have thus far denied him access to mental health programming based on his tentative release date. There is no indication that these actions were outside of the sentence originally imposed upon Plaintiff, or that there has been an increase in Plaintiff's original sentence as a result of Plaintiff's being placed on the waiting list. Indeed, even if Plaintiff never has access to mental health programming, he will only have to serve out the remainder of his original sentence without any change in the conditions of his confinement. Therefore, the Due Process Clause itself does not afford Plaintiff any protection.

Also, Plaintiff cannot demonstrate that he has a state-created liberty interest in parole. He cannot show that he has suffered an atypical or significant hardship as a result of being denied access to mental health programming. For example, he has not been transferred to a markedly more restrictive facility or had a previously-granted right revoked. His only potential hardship is that he may not be paroled, and such a possibility is neither atypical or significant in regular prison life. Again, Plaintiff may simply be required to serve out the remainder of his sentence under the same conditions as other prisoners.

Importantly, Plaintiff also cannot demonstrate that failure to receive mental health programming will necessarily impact the duration of his sentence. There is no guarantee that Plaintiff will complete the programming even if he is granted access

to it, nor does completion of programming mandate Plaintiff's parole under Nebraska law. Additionally, the Nebraska Board of Parole has the discretionary power to examine numerous other factors in determining whether or not parole will be granted.[1] Therefore, simply granting Plaintiff access to mental health programming will not guarantee his release and thus, will not impact the duration of his sentence. In short, Plaintiff does not have a liberty interest in being granted access to mental health programming regardless of its potential impact on his chance at parole. Therefore, Plaintiff's claim must be dismissed for failure to state a claim upon which relief can be granted.

### C. Fourteenth Amendment State Procedural Claims

While it is unclear, Plaintiff may also allege that Defendants violated his due process rights because Defendants failed to comply with state procedures. (Filing No. 1 at CM/ECF pp. 6-7.) However, a federal court will not inquire into whether "state officers follow state law." *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996) ("[The plaintiff's] only argument is that the state failed to follow its own procedural rules and thus failed to afford him the due process of law mandated by the Constitution. But, as we have stated above, the Due Process Clause does not federalize state-law procedural requirements."). Because the court has already

---

[1] The court notes that the Nebraska Supreme Court recently determined that Nebraska state law does not create a "protected liberty interest in obtaining sex offender treatment while still incarcerated," nor does Nebraska state law require sex offenders to obtain treatment prior to release. *S.C. v. Mental Health Bd. of the Fifth Jud. Dist.*, 810 N.W.2d 699, 703-4 (Neb. 2012) ("In Nebraska, however, treatment is not a condition of release at the end of a criminal sentence, nor is there any statute mandating the State to provide treatment of any kind to inmates. As noted, § 71–1202 states that "[i]t is the public policy of the State of Nebraska that dangerous sex offenders be encouraged to obtain voluntary treatment," but that language is merely suggestive. It does not create a liberty interest of which S.C. can claim he was deprived.").

determined that Plaintiff has no liberty interest in receiving mental health programming prior to his parole eligibility date, this court will not examine whether Defendants complied with state procedures in denying him mental health programming. Therefore, to the extent one exists, Plaintiff's claim relating to state-law procedures must be dismissed for failure to state a claim upon which relief can be granted.

### D.     Eighth Amendment Claims

For his final claim, Plaintiff alleges that Defendants' failure to provide him with mental health programming is a violation of his Eighth Amendment right to receive medical care while incarcerated. (Filing No. 1 at CM/ECF p. 8.) A prisoner-plaintiff seeking relief for claims relating to his medical care must allege that a defendant-prison official was deliberately indifferent to the plaintiff's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). Further, a plaintiff must allege that he had objectively serious medical needs, and that officials actually knew of but deliberately disregarded those needs. *Hartsfield v. Colburn,* 491 F.3d 394, 396-97 (8th Cir. 2007); *Johnson v. Hamilton*, 452 F.3d 967, 972-73 (8th Cir. 2006). "[S]ociety does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian,* 503 U.S. 1, 9 (1992). Therefore, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* (citing *Estelle,* 429 U.S. at 103-4).

Liberally construed, Plaintiff alleges generally that Defendants acted with "deliberate indifference" to his serious medical needs. (Filing No. 1 at CM/ECF p. 8.) Specifically, Plaintiff alleges only that Defendants denied Plaintiff's requests to gain access to specific "CSORT" mental health programming for "over 7 ½ years" and instead placed him on a waiting list. (*Id.* at CM/ECF pp. 6-8.) However, in order to state an Eighth Amendment claim, Plaintiff must allege that he has a "serious"

8

medical condition and must allege facts in support. Indeed, there is no allegation in the Complaint that Plaintiff suffers from any "serious" medical condition, either mental or physical, that Defendants ignored or otherwise disregarded. Further, Plaintiff fails to allege any facts supporting his general allegation of "deliberate indifference."

In short, the allegations currently before the court are insufficient to "nudge" Plaintiff's Eighth Amendment claim across the line from conceivable to plausible. However, on its own motion, the court will permit Plaintiff 30 days in which to amend his Complaint on this claim only to sufficiently allege a claim against the Defendants. Any amended complaint shall restate the allegations of Plaintiff's prior Complaint (filing no. 1) and any new allegations. Failure to consolidate all claims into one document will result in the abandonment of claims. If Plaintiff fails to file an amended complaint in accordance with this Memorandum and Order, Plaintiff's Complaint will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

IT IS THEREFORE ORDERED that:

1. Plaintiff's claims for monetary relief against Defendants in their official capacities, as well as the claims brought pursuant to the Fourteenth Amendment are dismissed without prejudice.

2. Plaintiff shall have until **July 12, 2012**, to amend his Complaint and clearly state a claim upon which relief may be granted under the Eighth Amendment against Defendants, in accordance with this Memorandum and Order. If Plaintiff fails to file a sufficient amended complaint, this matter will be dismissed without further notice for failure to state a claim upon which relief may be granted.

3. In the event that Plaintiff files an amended complaint, Plaintiff shall restate the allegations of the current Complaint (filing no. 1) and any new allegations. Failure to consolidate all claims into one document may result in the abandonment of claims.

4. The Clerk of the court is directed to set a pro se case management deadline in this case using the following text: Check for amended complaint on July 12, 2012, and dismiss if none filed.

5. Plaintiff shall keep the court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal without further notice.

DATED this11th day of June, 2012.

BY THE COURT:

*[signature: John M. Gerrard]*

John M. Gerrard
United States District Judge